### STAAB and another *v.* HERSCH.

Filed February 27, 1884.

ATTACHMENT—DEMANDS NOT DUE—ASSUMPSIT.
Attachment proceedings auxiliary to an action of *assumpsit*, but each characterized by separate pleadings and a distinct practice, may be commenced together for the same demand.  But, where it appears that the demand is not yet due, it is error to render judgment for plaintiff thereon in the action of *assumpsit*, although the attachment may be sustained upon the trial of that issue, the effect of which is only to create an attachment lien in advance of an action on the claim itself, when it becomes due.[1]

*Breedin, Catron, Thornton & Clancy,* for appellees.

*Gildersleeve & Knaeble,* for appellant.

BRISTOL, J.   The case is here by appeal from the district court of Santa Fe county.   The record discloses the following facts:

On the twentieth day of January, 1883, Zadoc Staab and Abraham Staab, as the members of a partnership, as Z. Staab & Bro., the appellees, filed in the court below their declaration in *assumpsit* against the appellant, Luis Hersch. The declaration contains but one count, which is as follows: "For that whereas the said defendant heretofore, to-wit, on the sixteenth day of January, A. D. 1882, at the county of Santa Fe, aforesaid, was justly indebted to the said plaintiffs in the sum of $545.67 for divers goods, wares, and merchandise by the said plaintiffs before that time sold and delivered to the said defendant, and at his special instance and request, and being so indebted, he, the said defendant, in consideration thereof, afterwards, to-wit, on the day and year aforesaid, at the county of Santa Fe, aforesaid, undertook and then and there faithfully promised the said plaintiffs to pay them the said sum of money above mentioned, when he, the said defendant, should be thereunto afterwards," etc.   The count then contains the usual allegation of non-payment, and demands judgment.   On the same day on which the declaration was filed the appellees filed an affidavit for an attachment, the affidavit being as follows:

[1]See note at end of case.

"*Territory of New Mexico, County of Santa Fe—ss.:* This day person-ally appeared before me, the undersigned, clerk of the district court for said county, Abraham Staab, and being duly sworn, says that Luis Hersch is justly indebted to the said Abraham Staab and Zadoc Staab, doing business under the name of Staab & Bro., in the sum of five hundred and forty-five dollars and sixty-seven cents, after allowing all just credits and offsets, on account of goods, wares, and merchandise sold and delivered; said sum of money is not yet due and payable according to the contract of sale and delivery of the goods, but the sum of two hundred and eighty-six dollars and twenty cents will become due and payable on the first day of February next, and the whole of the residue thereof on the fifteenth day of February, A. D. 1882; and that this affiant has good reason to believe, and does believe, that the said Luis Hersch is about fraudulently to dispose of his property or effects so as to hin-der, delay, or defraud his creditors.  ABRAHAM STAAB.

"Subscribed and sworn to before me this twentieth day of January, 1882.
"F. W. CLANCY, Clerk."

On the eighth day of February, 1882, the appellant pleaded the general issue of *non-assumpsit* to the declaration, (but without concluding to the country.)  On the fourth day of December, 1883, a jury was called in the court below to try the issues raised upon the affidavit for attachment.  Upon the conclusion of the evidence, and while the jury were out considering of their verdict, on the following day, the appellees moved the court to proceed to the trial of the cause on the issue raised by the plea of *non-assumpsit* to the declaration.  This was objected to, on behalf of appellant, on the ground that such trial was premature, and could not properly be proceeded in until the determination of the issues as to the truth of the affidavit for attachment; and upon the further ground that it appeared on the record of the attach-ment proceedings that the action was brought to recover demands before they were due and payable.  Each of these objections being overruled, exceptions were duly taken.  A trial thereupon was then had.  A sale of the goods, wares, and merchandise, as alleged in the declaration, was established, except as to the time of payment; the appellees admitting on the trial that, under the contract of sale, a credit was given until some time in February, 1882. Upon this condition of the evidence, appellant moved for a nonsuit, on the grounds that the attachment issue had not yet been disposed of; that the trial of the main issue was premature; and that it appeared from the plaintiff's own evidence that no part of the claims sued on was due or payable when the action was commenced.  This motion was overruled, and an exception taken.  The appellant then, on substantially the same grounds, moved the court to instruct the jury to find for the defendant.  This motion was over-ruled, and an exception taken.  The court thereupon instructed the jury to find for the plaintiffs, to which instruction the appellant excepted.  The jury brought in a verdict for appellant in the sum of $561.04, and judgment was rendered thereon for that sum, and costs.  Thereafter, the jury, in the attach-ment proceeding, came in, and announced their disagreement, and, without finding a verdict, were discharged.

The questions raised in this court are upon the exceptions taken in the court below.  As the law now stands in this territory, attachment proceedings are auxiliary to actions at law, but each is characterized by separate pleadings and a distinct practice.  The affidavit for an attachment has never been considered sufficient as a declaration, under our practice.  This common-law declaration must be re-sponded to by a common-law plea in order to raise an issue.  If the defendant desires to raise an issue on the affidavit for an attachment,

he must do so by a specific denial of some material fact or facts contained in the affidavit instead of pleading by a general denial; the statute on the subject being as follows:

"In all cases where property or effects shall be attached, the defendant may, at the court to which the writ is returnable, put in his answer, without oath, denying the truth of any material fact contained in the affidavit, to which the plaintiff may reply. A trial of the truth of the affidavit shall be had at the same term, and on such trial the plaintiff shall be held to prove the existence of the facts set forth in the affidavit *as the ground of the attachment.*" Prince's St. p. 139, § 16.

In 1874 an act was passed containing, among others, the following provisions:

"In all cases hereafter commenced by attachment, in which the truth of the affidavit for attachment, or of any material allegation therein contained, shall be denied, and the issue thus formed shall, upon the trial, be found for the defendant, the attachment shall be dismissed, and all property, rights, effects, and credits held or affected thereby or thereunder shall be released and discharged from the operation thereof; *but the dismissal of the attachment shall not abate the suit, but the same shall proceed as in ordinary cases.*" Id. p. 143, § 38.

This statute removes all doubt as to the mode of proceeding on matured money demands. A common-law action may be commenced, attended with common-law pleadings and practice, and, simultaneously, proceedings by attachment, auxiliary thereto, may be instituted and attended with statutory pleadings. If, on trial of the issues, as to the grounds of the attachment alleged in the affidavit, a verdict is rendered for the defendant, the attachment is dissolved, but the action at law proceeds to final judgment. But what should be the mode of procedure in cases of an attachment on demands not due? The only provision of statute on this question is as follows:

"An attachment may be issued on a demand not yet due, in any case where an attachment is authorized, in the same manner as upon demands already due." Id. p. 143, subd. 3, § 37.

All the other provisions of statute on the subject of attachment relate to demands due at the institution of the proceedings. Can this statute, thus injected into attachment proceedings, be construed as authorizing by implication an action at law to be commenced before demands are due, for the purpose of obtaining judgment thereon after they become due? The statute is silent as to the mode of procedure in a contingency of this kind. Attachment proceedings, being in derogation of the common law, must be construed strictly; nothing can be inferred. If an action be commenced on demands not due, when should the defendant be cited to appear and plead to the declaration? It cannot be inferred from this brief statute that he must interpose his defense, if he has any, before he can be called on to pay the demand. There being no statute regulations on the subject, this court no doubt has authority to prescribe by rule what the practice may be, so as to give effect to attachments covering demands not due, without

in the least changing the practice in actions at law to recover judgment on the same demands. The sole object of an attachment is to create a prior lien on the property of the attachment debtor, as security on any judgment that may thereafter be obtained against him on the demands covered by the attachment. When this extraordinary remedy is resorted to, covering demands not due, and especially where long credits are given, and the grounds of the attachment are traversed, a speedy determination of that issue becomes of the greatest importance; but it is evident that the main issue on the indebtedness cannot be raised, nor any defense interposed, until the maturity of the demand sued on, except to show that no such demands exist on which an attachment will lie.

Under our common-law pleadings and practice the only consistent mode of procedure in cases of this kind would be to treat the attachment proceedings on debts not due as separate and distinct from any action at law to recover judgment thereon, and to go no further than to create an attachment lien in advance of the commencement of such action,—the writ of attachment to contain a citation to the defendant to appear and answer the affidavit; the issue, if any, thus raised in the attachment proceedings, to be speedily tried, and the attachment lien dissolved or continued, according to the verdict of the jury for or against the defendant; if sustained, the attachment to remain a subsisting lien on the property of the debtor, and, upon the maturity of the demand, a declaration to be filed and the defendant cited to plead thereto; if the plaintiff recover judgment, then a writ of *venditioni exponas* to be issued for the sale of the property attached and the proceeds applied to the satisfaction of the judgment. The record in this case discloses the fact that, in addition to the affidavit for an attachment covering demands not due, a common-law declaration was at the same time filed, containing a single count for goods, wares, and merchandise sold and delivered, etc., and a promise on the part of the defendant *to pay on demand*. The defendant pleaded that he did not so promise. On the issue thus raised the parties went to trial, resulting in a verdict and judgment for the plaintiffs. The commencement of the action was the plaintiffs' demand for payment; and if the count in the declaration were true, the demand at once became due and payable. But the plaintiffs on the trial admitted that the demand, at the time mentioned in the declaration, was not due and payable, and did not become due for some time thereafter, under the express contract of sale and delivery of the goods. This was conclusive upon the plaintiffs, and left them without any evidence to support their count in the declaration. The count was not true, and the plea of *non-assumpsit* was sustained by the evidence. As to the attachment, the indebtedness alleged in the affidavit does not correspond with that specified in the declaration. In the affidavit it consists of two demands, due at different specified future dates, while the declaration is upon a single demand, due and payable on demand.

The plea of the declaration of *non-assumpsit* does not conclude to the country, and technically no issue was tendered thereby.

The parties having appeared generally in all the proceedings in the court below, and as irregularities have been committed on either side, we are of the opinion not only that the judgment below ought to be reversed, but that the cause should also be remanded to the court below, with directions to grant leave to the plaintiffs to file a new declaration in accordance with this opinion, and thereupon to proceed by due course of law and practice to final judgment. And it is so ordered.

BELL, J., concurring.

### NOTE.

#### ATTACHMENT—GROUNDS—PRACTICE.

1. GROUNDS. An assignment for the benefit of creditors, fraudulent in law because of its failure to comply with the statutory requirements of such assignments, is ground for attachment, though there is no fraud in fact, Leitensdorfer v. Webb, 1 N. M. 34; and such assignment may be attacked by attachment by a general creditor; and on the trial of the issues in attachment it is admissible in evidence to show that the property had been disposed of, as charged in the affidavit, with intent to hinder and defraud creditors. The assignment is evidence of the disposition of the property merely, and the fraud must be shown by other evidence. Meyer v. Black, 4 N. M. —, 16 Pac. Rep. 620. In *Kansas*, however, a void assignment for the benefit of creditors will not sustain an attachment on the grounds of fraudulent disposition of property. Cooper v. Clark, 24 Pac. Rep. 422. So in *Missouri*, fraud in law will not sustain an attachment under the statute providing that attachment may be had "where the defendant has fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors;" there must be actual fraud in fact. Iron-Works v. Hill, 22 Fed. Rep. 195. But where the assignment is otherwise valid, and not intended to defraud, hinder, or delay creditors, it will not sustain an attachment because its incidental effect is to hinder and delay creditors somewhat. Torlina v. Trorlicht, 4 N. M. —, 21 Pac. Rep. 68. An assignment with preferences, by an insolvent corporation, is no ground for attachment. Foster v. Mill Co., (Mo.) 4 S. W. Rep. 260; but a fraudulent mortgage is, Implement Co. v. McWhorter, (Kan.) 21 Pac. Rep. 86. An attempt to make a general assignment for the benefit of creditors is no evidence of fraud. Bank v. Rosenfeld, (Wis.) 28 N. W. Rep. 370; Wearne v. France, (Wyo.) 21 Pac. Rep. 703. Nor is a debtor's confession of judgment in favor of a *bona fide* creditor a ground for attachment. Wyman v. Wilmarth, (S. D.) 46 N. W. Rep. 190. That a debtor refuses to give one creditor security, but gives mortgages to secure other *bona fide* creditors, is no evidence of a fraudulent intention that will sustain an attachment. Ray v. Gore, (Mich.) 41 N. W. Rep. 329. Nor is the preference in any other way of one creditor over another. Britton v. Boyer, (Neb.) 43 N. W. Rep. 356; Farwell v. Brown, 1 Fed. Rep. 128. But giving one creditor a mortgage on a much greater amount of property than is necessary to secure the debt is a fraudulent disposition, that will sustain an attachment. Smith v. Boyer, (Neb.) 45 N. W. Rep. 265; Gallagher v. Goldfrank, (Tex.) 12 S. W. Rep. 964.

2. PRACTICE. Where the citation by publication omits a part of the notice required by statute to be given, the court acquires no jurisdiction, and the judgment *in rem* is void. Smith v. Montoya, 3 N. M. 39, 1 Pac. Rep. 175. Where the writ is made returnable to an impossible day, as to a day prior to its issuance, the proceedings thereunder are void. Holzman v. Martinez, 2 N. M. 271. The petition or other statement of the cause of action must be served with the writ, in order to complete the service. Id. A forthcoming bond does not operate to release the lien of attachment. Id. The bond and affidavit must be filed before the issuance of the writ. Waldo v. Beckwith, 1 N. M. 97. And where the record discloses that they were not so filed, it cannot be corrected by a *nunc pro tunc* entry, based on extraneous testimony. Id. Where the attachment is against a resident debtor, who has absconded, a valid service may be had by leaving a copy of the writ at his usual place of abode, with some person over 15 years of age, and publication is unnecessary. Spiegelberg v. Sullivan, 1 N. M. 575. A variance in the description of the parties between the affidavit and writ is fatal, even though the petition filed with the affidavit conforms to the writ. Bennett v. Zabriski, 2 N. M. 176. But see Robinson v. Hesser, 4 N. M. —, 13 Pac. Rep. 204, in which Bennett v. Za-

*briski* is strongly disapproved, though not expressly overruled, and it is held that an affidavit which follows the form prescribed by statute is good though it violates common-law rules of pleading.

3. WRONGFUL ATTACHMENT. An attorney who, in pursuance of instructions from his client, and acting in good faith, on information that would lead a prudent man to suppose that good grounds of attachment exist, is not liable for malicious attachment. Leyser v. Field, (N. M.) 23 Pac. Rep. 173. Malice and want of probable cause are both essential to maintain an action for malicious attachment, and the burden of proof as to both is on plaintiff. They are distinct ingredients of the wrong, and neither one is dependent on or necessarily inferred from the other; but the jury may infer malice from the circumstances which go to establish want of probable cause. Grant v. Reinhart, 33 Mo. App. 74. Besides showing that there were no grounds for attachment, the plaintiff, in an action for malicious attachment, must also show want of probable cause and malice. Collins v. Shannon, (Wis.) 30 N. W. Rep. 730. An action for malicious attachment is maintainable though the goods are never actually levied on, and defendants in the attachment settle the attachment by paying the debt; for the fact that a malicious attachment is terminated by compromise does not deprive the attached debtor of his right to recover damages for the wrong. Brand v. Hinchman, (Mich.) 36 N. W. Rep. 664.